Cheryl NELSON, Plaintiff,

v.

A. H. ROBINS COMPANY, a corporation, and Hugh J. Davis, M.D., Defendants.

No. C-80-2213.

United States District Court, N. D. California.

June 4, 1981.

Anthony J. Klein, Di Giorgio, Davis & Klein, Bakersfield, Cal., Rodney A. Klein, Sacramento, Cal., for plaintiff.

Robert C. Gerhardt, Fern M. Smith, Thomas H. Sloan, Bronson, Bronson & McKinnon, Thomas W. Kemp, Peter E. Sibley, Washburn, Kemp & Wagenseil, San Francisco, Cal., for defendant A. H. Robins Co., a corp.

Sedgwick, Detert, Moran & Arnold Kevin J. Dunne, San Francisco, Cal., Sherwood & Hensley, William A. Hensley, Wichita, Kan., for defendant Hugh J. Davis, M. D.

## MEMORANDUM OF OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

SPENCER WILLIAMS, District Judge.

This matter recently came before this court on defendants' motion for summary judgment based on the statute of limitations. Plaintiff Cheryl Nelson seeks damages for injuries allegedly sustained as a result of using the Dalkon Shield, a contraceptive device manufactured by defendant A. H. Robins Company and invented by defendant Hugh Davis.

The sole question presented in this case is whether the plaintiff possessed sufficient information regarding the causal connection between her injuries and the defendants' allegedly defective product so as to put her on a duty of inquiry prior to the commencement of the statutory time period. In light of the limited evidence presented on this motion and the conflicting inferences that can be drawn therefrom, the court concludes that there remains a genuine issue of fact regarding the accrual of the plaintiff's cause of action. Accordingly, the defendants' motion for summary judgment is denied. The following constitutes the court's reasons for so ruling.

### FACTUAL BACKGROUND

Plaintiff Cheryl Nelson was inserted with an intrauterine device (IUD) called the Dalkon Shield on February 26, 1971. Later that same year, Ms. Nelson began to suffer severe abdominal cramps and experienced a series of fainting spells including an episode in Tilden Park on July 18, 1971. At that time, she was taken to the emergency room at John Muir Hospital where her condition was diagnosed as pelvic inflammatory disease.

After her visit to the hospital, the plaintiff's personal physician informed her that she had developed a pelvic infection and recommended removal of the IUD. Ms. Nelson was told that the device itself was "obviously infected" and as such was causing her a great deal of pain. At no time did the doctor inform her that the Dalkon Shield was, in fact, the cause of her condition. After removal of the device in July, 1971, the plaintiff experienced no further problems for well over a year.

In January, 1973, after a year of trying to get pregnant without success, plaintiff visited her doctor who informed her that her fallopian tubes were blocked with scar tissue from her prior pelvic infection. An exploratory laparotomy was performed for a tubal repair. Again in 1977, after a continuing period of infertility and a fainting episode from abdominal pain, the plaintiff underwent an exploratory procedure which revealed that her tubes were open. Plaintiff alleges that she was unable to become pregnant for another year, at which time she fully realized that she had been rendered infertile.

## ANALYSIS

On a motion for summary judgment, the affidavits of the moving party are strictly construed and any doubts as to the propriety of granting the motion must be resolved in favor of the party opposing the motion.[1] Summary judgment is proper only where there is no genuine issue of any material fact or where viewing the evidence and the inferences which may be drawn therefrom in the light most favorable to the adverse party, the moving party clearly is entitled to prevail as a matter of law.

■ In determining the law applicable to the statute of limitations issue presented, the court must apply the law of the state in which it sits.[2] An examination of California law discloses, as the parties appear to concede, that the plaintiff's various claims for relief are governed by California Code of Civil Procedure section 340(3) which provides a one-year limitations period in actions "for injury to or for the death of one caused by the wrongful act or neglect of another. . . . "

■ In California, the period of limitations begins to run on the date on which the cause of action accrues.[3] Generally, the action "accrues" when the wrongful act is done and the party has sustained injuries for which relief could be sought at law.[4]

■ The California courts, however, have created several exceptions to this strict rule of accrual. For example, where there is no single, alleged wrongful act but rather a period of exposure which results in a continuing injury, the statute is tolled until the plaintiff knew or should have known that he was suffering from a disease that was likely to cause him injury.[5] A similar rule applies when the plaintiff's injury involves "pathological effects occurring without perceptible trauma.[6]"

■ Neither of these two injury-based exceptions applies to the facts of the present case. Ms. Nelson was aware in 1971 that she suffered an injury, i. e., pelvic inflammatory disease. The case is governed, therefore, by the rule in California that when the fact of injury is known, the failure to discover some or most of the resulting damage until later will not toll the running of the statute.[7]

■ California courts also have departed from the strict rule when the plaintiff's failure to bring a cause of action is due to the defendant's fraudulent concealment of facts relating to the discovery of a potential cause of action.[8] Similarly, this exception does not apply to the allegations in the present case. The allegations of fraud herein represent fraud in the inducement rather than a fraud which would have concealed the existence of a claim against Robins. The courts which have addressed this issue, including this one, are in agreement that this is not a case in which the defendant lulled the plaintiff into inaction during the period when she could have brought this lawsuit.[9]

1. *Stansifer v. Chrysler Motors Corporation,* 487 F.2d 59, 63 (9th Cir. 1973).

2. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

3. California Code of Civil Procedure § 312.

4. *United States Liab. Ins. Co. v. Haidinger-Hayes, Inc.,* 1 Cal.3d 586, 596, 83 Cal.Rptr. 418, 463 P.2d 770 (1970); 2 Witkin, California Procedure, § 263, pp. 116–17 (2d ed.).

5. *Velasquez v. Fibreboard Paper Products,* 97 Cal.App.3d 881, 887–89, 159 Cal.Rptr. 113 (1979).

6. *Warrington v. Charles Pfizer & Co.,* 274 Cal. App.2d 564, 569–70, 80 Cal.Rptr. 130 (1969).

7. *Davies v. Krasna,* 14 Cal.3d 502, 514, 121 Cal.Rptr. 705, 535 P.2d 1161 (1975); *Warrington v. Charles Pfizer & Co.,* 274 Cal.App.2d 564, 80 Cal.Rptr. 130 (1969).

8. *See e. g., Pashley v. Pacific Elec. Ry. Co.,* 25 Cal.2d 226, 153 P.2d 325 (1944).

9. *Dean v. A. H. Robins Company,* No. IP 80–70–C (S.D.Ind., filed February 20, 1981) (S. Hugh Dillin, J.); *Knaysi v. A. H. Robins, Inc.,* 503 F.Supp. 205, 208 (N.D.Fla.1980); *In re Northern District of California "Dalkon Shield" IUD Products Liability Litigation, Sidney-Vinstein,* 503 F.Supp. 194, 198 (N.D.Cal.1980).

One exception to the strict accrual rule, however, does apply to the facts of the present case. Courts have relaxed the rule in cases where a person, while aware that he has been injured, has not yet discovered that his injury was *caused* by a defendant's conduct or defective product. This discovery rule provides that in an appropriate case, a cause of action will be held not to accrue until the injured party discovers, or by the exercise of reasonable diligence should have discovered, the facts constituting the wrongful act or omission.[10] This rule is premised on the sound policy that it would be inequitable to deny an injured person the opportunity to press a claim when he reasonably was unaware that his injury was attributable to the defendant.

The critical inquiry in applying this exception to the instant lawsuit is whether Ms. Nelson discovered or should have discovered facts that identified a conclusive relationship between her injuries and the defendants' allegedly defective product. As this court has previously noted in its *Sidney-Vinstein* opinion [11] it is the discovery of facts rather than the knowledge of legal theory that is the test.[12]

In this case, it is altogether unclear on the basis of the single deposition presented whether Ms. Nelson possessed facts sufficient to enable her to draw a conclusive relationship between her pelvic infection and the Dalkon Shield. Her doctor's statement that the IUD was removed because "it was obviously infected and causing her problems" raises dual inferences as to its effect on the state of the plaintiff's knowledge of the precise cause of her injuries. For example, she might have interpreted the physician's ambiguous statement as reflecting a desire to remove a perfectly non-defective IUD so as not to aggravate her independently-caused condition.

At this point of discovery, it is uncertain whether Ms. Nelson received a clear-cut diagnostic statement regarding the causal relationship necessary to commence the limitations period. At the time Ms. Nelson's doctor diagnosed her injuries, the connection between the Dalkon Shield and pelvic infection, if any, was uncertain to the medical profession. Moreover, it surely cannot be said as a matter of law that plaintiff, as a lay person, was under a duty of inquiry to have ascertained the complicated causal relationship without a more definite statement on the part of her treating physician.

The information which the plaintiff must possess with respect to the diagnosis relating her injuries to a particular product is "meant to be ... an 'informed diagnosis' roughly parallel to 'informed consent' in medical malpractice or battery actions [13]." The physician's diagnosis regarding causation must be such that a party understood the information to such a degree that it can be asserted that the patient knew or should have known that the defendant's allegedly defective product caused her injuries.[14]

This action is factually distinguishable from this court's *Sidney-Vinstein* case. In *Sidney-Vinstein*, the plaintiff was fully apprised of the fact that the lodging of the

---

10. *Warrington v. Charles Pfizer & Co.*, 274 Cal. App.2d 564, 569, 80 Cal.Rptr. 130 (1969); In many cases of course, the knowledge of injury is, by itself, sufficient to put the plaintiff on inquiry that defendant's conduct or product caused his injuries. *See e. g., Gray v. Reeves*, 76 Cal.App.3d 567, 573, 142 Cal.Rptr. 716 (1973).

11. *In re Northern District of California "Dalkon Shield" Iud Products Liability Litigation, Sidney-Vinstein*, 503 F.Supp. 194, 197 (N.D.Cal. 1980).

12. Since "[m]ost people do not know the legal answers to questions arising from certain circumstances," the practical effect of a contrary rule would be the nullification of any statute of limitation. *McGee v. Weinberg*, 97 Cal.App.3d 798, 804, 159 Cal.Rptr. 86 (1979); *contra, Lynch v. Rubacky*, 85 N.J. 65, 424 A.2d 1169 (1981).

13. *Velasquez v. Fibreboard Paper Products*, 97 Cal.App.3d 881, 888–89, 159 Cal.Rptr. 113 (1979).

14. *Cf. Canterbury v. Spence*, 464 F.2d 772 (D.C. Cir. 1972), *cert. denied* 409 U.S. 1064, 93 S.Ct. 560, 34 L.Ed.2d 518.

device in her uterine wall was the sole cause of her infection and consequent hysterectomy.[15] Moreover, Ms. Sidney-Vinstein admitted that at the time of her surgery she knew that if the device had performed as expected it would not have perforated her uterus.[16] Finally, Ms. Sidney-Vinstein's injuries were established at the time of her surgery and neither continued into or manifested themselves during the future. None of these critical facts have been established in this case.

## CONCLUSION

The grant of a motion for summary judgment is a drastic remedy and should be used with caution so as not to serve as a substitute for a trial on the merits. The judicial inquiry into an aggrieved party's knowledge of the cause of her injuries must be exacting.

The slender record upon which this summary judgment rests does not afford an adequate basis for determining whether Ms. Nelson reasonably was made aware of the origin of her alleged injury. Therefore, plaintiff should have the opportunity for a more definite determination of the date or approximate date on which she knew the nature of her injuries and their relation to the defendants' allegedly defective product.

Accordingly, the defendants' motion for summary judgment is hereby denied.