Linda MILLER and Barry Miller,
Plaintiffs-Appellants,

v.

A.H. ROBINS COMPANY, INC.,
Defendant-Appellee.

No. 83–3048.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 8, 1984.

Decided July 3, 1985.

Rehearing and Rehearing En Banc
Denied Aug. 26, 1985.

Mary Beth Ramey, Ramey & Hailey, Indianapolis, Ind., for plaintiffs-appellants.

Ralph A. Cohen & Mary Nold Larimore, Ice, Miller, Donadio & Ryan, Indianapolis, Ind., for defendant-appellee.

Before WOOD and POSNER, Circuit Judges, and DUMBAULD, Senior District Judge.*

HARLINGTON WOOD, Jr., Circuit Judge.

This appeal raises the issue whether a physician's statement to a plaintiff that plaintiff's Dalkon Shield was a possible cause of her pelvic inflammatory disease began the limitations period under Indiana's newly-adopted discovery rule. We hold that this statement put plaintiff on notice of her potential cause of action and we therefore affirm the district court's order granting summary judgment for the defendant, A.H. Robins Company.

I.

On July 24, 1972, Dr. Paul Felion inserted a standard size (multiparous) Dalkon Shield into the uterus of plaintiff Linda Miller. Two years later, on July 25, 1974, Dr. Felion examined Ms. Miller's Dalkon Shield and told her that "it looked fine." On October 13, 1974, Linda Miller was taken to the emergency room of LaCrosse Lutheran Hospital, where she was treated for a pelvic infection. Miller remained hospitalized until November 1, 1974, and during this stay the Dalkon Shield was removed.

After Miller married plaintiff Barry Miller in 1980, she experienced difficulty becoming pregnant. She consequently consulted Dr. Robert Cleary in 1981, and, after performing a laparotomy on September 1, 1981, Dr. Cleary determined that the scarring in Ms. Miller's ovaries and fallopian tubes was so extensive that Ms. Miller was infertile. Dr. Cleary also advised the Millers that in his opinion there was a causal

relationship between her infertility and the severe pelvic infection that she had in 1974. Finally, Dr. Cleary told them that in his opinion the Dalkon Shield intrauterine device caused the pelvic infection.

On November 13, 1981, the Millers brought this action based on theories of negligence, strict liability, implied warranty, express warranty, fraud, and fraudulent concealment. The district court granted summary judgment for defendant on the ground that the plaintiffs failed to file their action within two years from when the statute of limitations began to run.[1]

II.

■ The Indiana Supreme Court recently adopted a discovery rule for determining when the statute of limitations begins to run when a plaintiff's injury is caused by a disease that may have been contracted as a result of protracted exposure to a foreign substance. *Barnes v. A.H. Robins Co.,* 476 N.E.2d 84, 87–88 (Ind.1985). *Barnes* held that the statute of limitations begins to run from the date the plaintiff knew or should have discovered (1) that she suffered an injury or an impingement, and (2) that it was caused by the product or act of another. *Id.*

In the present case, Ms. Miller knew she had suffered an injury when she was hospitalized in 1974. The plaintiffs contend, however, that Ms. Miller neither knew nor should have discovered the cause of her 1974 illness until Dr. Cleary performed a laparotomy in September, 1981. In support of her contention, she submitted an affidavit by Dr. Felion which stated that he does not recall advising Ms. Miller of any connection between her use of the Dalkon

* The Honorable Edward Dumbauld, Senior District Judge for the Western District of Pennsylvania, is sitting by designation.

1. Although the plaintiffs' complaint included fraud and fraudulent concealment counts, which are usually subject to a six-year statute of limitations, the district court held that the substance of these two counts is a claim of products liability and therefore applied the two-year statute of limitations. *See Tolen v. A.H. Robins Co.,* 570 F.Supp. 1146, 1155–56 (N.D.Ind.1983). The plaintiffs also argued in the district court that

the counts for breach of implied and express warranty are governed by a four-year statute of limitations. *See* Ind.Code § 26–1–2–725 (Burns 1984). The district court held that plaintiffs failed to allege that they were in privity of contract with the defendant and that these claims also sounded in tort and were subject to the two-year statute of limitations. On appeal, the plaintiffs have not challenged the district court's ruling that the two-year statute of limitations applies to all six counts, and we therefore apply the two-year statute of limitations.

Shield and the pelvic inflammatory disease that she suffered in 1974. The plaintiff also submitted her own affidavit stating that in 1974 her treating physicians did not advise her of any connection between her illness and her use of the Dalkon Shield. The defendant argues that these affidavits do not create a genuine issue of material fact because Ms. Miller testified at her deposition that her treating physicians told her in 1974 that the Dalkon Shield was a possible cause of her illness.

■ A district court should grant a summary judgment only if the pleadings, depositions, answers to interrogatories, admissions, and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). On an appeal from a summary judgment, the appellate court must view the record and the inferences drawn therefrom in the light most favorable to the non-moving party. *See Munson v. Friske,* 754 F.2d 683, 690 (7th Cir.1985). The appellate court may affirm a summary judgment if the judgment is correct but the reasons given by the trial court are erroneous. *See Pfeil v. Rogers,* 757 F.2d 850, 866 (7th Cir.1985). Since Ms. Miller's affidavit, if believed,

would create an issue of fact as to when she knew or should have discovered the cause of her 1974 illness, we must first decide whether a party can create a genuine issue of material fact by submitting an affidavit that contradicts that party's prior deposition testimony.

■ Parties cannot thwart the purpose of Rule 56 by creating issues of fact through affidavits that contradict their own depositions. *See Perma Research and Development Co. v. Singer Co.,* 410 F.2d 572, 577–78 (2d Cir.1969). An inconsistent affidavit may preclude summary judgment, however, if the affiant was confused at the deposition and the affidavit explains those aspects of the deposition testimony or if the affiant lacked access to material facts and the affidavit sets forth the newly-discovered evidence. *See Camfield Tires, Inc. v. Michelin Tire Corp.,* 719 F.2d 1361, 1364–65 (8th Cir.1983); *Kennett-Murray Corp. v. Bone,* 622 F.2d 887, 893–95 (5th Cir.1980).

At her deposition, Ms. Miller stated three times that her doctors told her the Dalkon Shield was a possible source of her infection.[2] Nothing in the deposition suggests

---

2. The following are excerpts from Ms. Miller's deposition:

Q. [by defense counsel] Do you remember whether the Dalkon Shield was removed during [the 1974] hospitalization?
A. Yes, it was.
Q. Do you know [why] they removed that?
A. I remember them saying they wanted to take it out because it was an irritation to their treatment of my pelvic infection.
　*　*　*　*　*　*
Q. Was Dr. Felion the physician that told you that he was removing it because it was irritating your infection?
A. Yes.
[plaintiff's counsel] Just a minute. I will object to the question. Because that wasn't what her answer was, irritating the infection. She said it was irritating the treatment for the pelvic infection.
Q. Was your answer it was irritating the treatment?
A. Yes. They told me it was irritating the treatment because of the fact that my fever was not going down. And they wanted to get it out because they felt it was interfering with the treatment.

Q. Did anybody tell you that the Dalkon Shield or the IUD could be the possible source of the infection?
A. They said they wanted to remove it because it was irritating the treatment and that, you know, it was among a lot of things at that point that they said was a source.
[Q.] Could you read my question back? (The requested material was read by the reporter.)
A. Yes. They named—
[plaintiff's counsel] You answered it. That's all right.
A. Along with others.
Q. So they mentioned other sources of possible infection among the IUD or the Dalkon Shield?
A. They didn't know at that point in time. They said it was possible.
Q. What were the other things they name[d] as being possible sources?
A. No, they just said I had a severe pelvic infection and that the Dalkon Shield had to be removed because it was irritating the treatment and that it was possible that it was among the causes. But being not familiar with medical terminology, I just know I had several things

that Ms. Miller was confused by the questions. Furthermore, although Ms. Miller read the deposition, made several changes to correct inaccuracies and a possible misinterpretation, and signed the deposition, she made no corrections to her statements about what the doctors told her in 1974. On the other hand, the only relevant assertions in Ms. Miller's affidavit were as follows:

3. That although I was hospitalized in 1974 for symptoms consistent with an infection, I was not advised by my treating physicians that there was any connection between the illness and injury I suffered and my use of the Dalkon Shield.

4. That I was not aware of any connection between any harm to myself and the use of the Dalkon Shield until I was evaluated by Dr. Cleary in Indianapolis in 1981.

This affidavit neither suggests that Ms. Miller was confused at her deposition nor offers a reason for the direct contradiction of her prior testimony. Consequently this affidavit did not create a genuine issue of fact and the district court could grant summary judgment for the defendant if Ms. Miller's deposition testimony established that Robins was entitled to judgment as a matter of law.

### III.

The plaintiffs offer several reasons why, even if Ms. Miller's doctors told her in 1974 that the Dalkon Shield was a possible cause of her illness, she should not have been expected to discover that the Shield caused her illness until 1981. First, citing *Nelson v. A.H. Robins Co.*, 515 F.Supp. 623 (N.D. Cal.1981), the Millers argue that the physicians' statement in 1974 was ambiguous.

In *Nelson*, the district court held that a doctor's statement that Ms. Nelson's Dalkon Shield "was obviously infected and causing her problems" did not necessarily inform the plaintiff that the Dalkon Shield caused the infection. The doctor's statement, the court suggested, could also be interpreted to mean that a non-defective Dalkon Shield had become infected from an independently-caused infection. *Id.* at 626. In the present case, although Ms. Miller stated in her deposition that the doctors told her the Dalkon Shield was irritating her treatment, her testimony does not suggest any ambiguity about causation: she stated three times that she was told in 1974 that her Dalkon Shield was one of several possible causes of her illness.

■ To the extent that *Nelson* suggests that the limitations period begins to run only when a plaintiff knows or should have discovered that the defendant's product was *the actual cause*, rather than a possible or probable cause, of the injury, *see id.*, *Nelson* is inconsistent with Indiana law. In *Barnes*, the Indiana Supreme Court stated that persons who know or should have discovered both the injury and the cause "have a fair opportunity to investigate available sources of relevant information and to decide whether to bring their claims in court within the time limitations in the statute." 476 N.E.2d at 88. The notion of "a fair opportunity to investigate" suggests that discovering "the cause" is something less than possessing irrefutable proof of causation. The doctors' statement, by itself, informed Ms. Miller of the possible causal connection, and should have prompted Ms. Miller either to contact a lawyer or to conduct her own inquiry. *See Ballew v. A.H. Robins Co.*,

going on at the same time. So they just listed that as among some of them.

\* \* \* \* \* \*

Q. [by plaintiff's counsel] When you were admitted to the hospital in October of 1974 and then subsequently released in 1974, did anybody sit down with you and tell you that the reason you [were] in the hospital was because of the Dalkon Shield?

\* \* \* \* \* \*

A. I was told I had a severe pelvic infection.

Q. Did anybody sit down with you and tell you that the cause of the pelvic infection was the Dalkon Shield?

A. I was told that there could be many causes, one of which could have been the Dalkon Shield.

Q. Did anybody tell you that it was caused by the Dalkon Shield?

A. No.

688 F.2d 1325, 1326 (11th Cir.1982) (plaintiff consulted three additional doctors after her treating physician said he could not tell whether the Dalkon Shield caused her illness). Had she done so, she should have discovered that a number of other women were suing the A.H. Robins Company alleging that a Dalkon Shield had caused them to suffer pelvic inflammatory disease. *See, e.g., In re A.H. Robins Co. "Dalkon Shield" IUD Products Liability Litigation,* 406 F.Supp. 540 (J.P.M.L.1975). She also could have discovered that the discharge summary prepared by her doctors in 1974 diagnosed her infection as "[b]ilateral tubo-ovarian abscesses with mild peritonit—secondary to intra-uterine device (Dalkon Shield)." Ms. Miller therefore had the "fair opportunity to investigate" envisioned by the Indiana discovery rule.

*Ballew v. A.H. Robins Co.* is also distinguishable from the present case. In *Ballew,* the plaintiff specifically asked her treating physician whether the Dalkon Shield caused her infection. 688 F.2d at 1326. Her doctor told her that he could not say whether the Shield was causally related to the infection; the plaintiff stated in her deposition that three other physicians she consulted gave the same response. The Eleventh Circuit reversed the summary judgment for Robins and held that the equivocal responses of the doctors could have quashed any suspicions Ms. Ballew had about the Dalkon Shield causing her infection. *Id.* at 1328. Noting that the plaintiff had introduced evidence that Robins had not informed doctors of the possible relationship between the Dalkon Shield and pelvic infection until September 25, 1980, the *Ballew* court concluded that an issue of fact existed as to when Ms. Ballew should have discovered the causal connection. *Id.*

In the present case, as in *Ballew,* the plaintiff appeals a summary judgment for Robins and we must therefore view the evidence and draw all reasonable inferences in the light most favorable to the plaintiff. *Munson,* 754 F.2d at 690. In contrast to *Ballew,* here the plaintiff's doctors did nothing to quash a suspicion that the Dalkon Shield may have caused the pelvic infection. In fact, it was Ms. Miller's doctors who specifically told her that the Dalkon Shield was a possible cause of her infection. *See Olson v. A.H. Robins Co.,* 696 P.2d 1294, 1298 (Wyo.1985) (physician's statement need only indicate to a reasonable person the causal relationship). Also unlike Ms. Ballew, who consulted three other doctors in an effort to discover the cause of her illness, Ms. Miller does not claim that she undertook an investigation after learning of the possible causal relationship in 1974. Therefore the Indiana discovery rule does not preclude summary judgment for Robins on statute of limitations grounds.

The plaintiffs also argue that Ms. Miller should not have been expected to discover the causal connection before 1981 because A.H. Robins Company fraudulently concealed the defective nature of the Dalkon Shield. Several courts, viewing much of the same evidence that the Millers submitted here, have held that that doctrines of fraudulent concealment and equitable estoppel precluded summary judgment for Robins. *See Allen v. A.H. Robins Co.,* 752 F.2d 1365, 1370–76 (9th Cir.1985) (applying Idaho law); *Knaysi v. A.H. Robins Co.,* 679 F.2d 1366, 1368–70 (11th Cir.1982) (applying New York law). *But see Philpott v. A.H. Robins Co.,* 710 F.2d 1422, 1425–26 (9th Cir.1983) (applying Oregon law).

Indiana law provides that the statute of limitations is tolled if the defendant fraudulently conceals the plaintiff's cause of action. *See* Ind.Code § 34–1–2–9 (Burns 1984); *Forth v. Forth,* —— Ind.App. ——, 409 N.E.2d 641, 644–45 (1980). For the doctrine of fraudulent concealment to apply, Indiana law requires, *inter alia,* a showing of reasonable care and due diligence on the part of the plaintiff. *See Morgan v. Koch,* 419 F.2d 993, 999 (7th Cir.1969); *Tolen v. A.H. Robins Co.,* 570 F.Supp. 1146, 1152 (N.D.Ind.1983). When a plaintiff learns of information that would lead to the discovery of the cause of action through diligence, the statute of limitations

begins to run, regardless of concealment. *Adams v. Luros*, —— Ind.App. ——, 406 N.E.2d 1199, 1203 (1980); *Toth v. Lenk*, 164 Ind.App. 618, 622–25, 330 N.E.2d 336, 340–41 (1975). In the present case, Ms. Miller learned in 1974 that the Dalkon Shield was a possible cause of her infection. As we held above, this information should have caused her to make further inquiries as to whether the Dalkon Shield could have caused her pelvic infection. But Ms. Miller does not claim—and she has submitted no evidence—that she conducted a diligent, but unproductive, search after her 1974 illness. *Cf. Ballew*, 688 F.2d at 1326 (after plaintiff received equivocal responses from her treating physician, she consulted three other doctors). Indeed, as we suggested above, in this particular case a diligent search should have uncovered the hospital discharge summary and other evidence identifying the Dalkon Shield as a likely cause of her pelvic infection. Viewing the evidence and all reasonable inferences therefrom in the light most favorable to the plaintiffs, we hold that Ms. Miller cannot make the showing of due diligence required by the Indiana fraudulent concealment doctrine. Therefore Robins is not equitably estopped from relying on the statute of limitations.[3]

AFFIRMED.

---

[3.] Since we hold that Ms. Miller failed to act with due diligence, Robins is entitled to summary judgment even though, viewing the facts in the light most favorable to plaintiffs, the company made a number of false claims and attempted to conceal the dangers of the Dalkon Shield from doctors and their patients. We therefore deny the plaintiffs' motion to remand the case to the district court so that they may submit allegedly newly-discovered evidence of Robins's fraudulent concealment.