Carolyn BALLEW and Thomas J. Ballew, Plaintiffs-Appellants,

v.

A. H. ROBINS COMPANY, a Corporation, Defendant-Appellee.

No. 81–7415.

United States Court of Appeals, Eleventh Circuit.

Aug. 30, 1982.

Daryl G. Lecroy, Atlanta, Ga., for plaintiffs-appellants.

Jones, Bird & Howell, Dow N. Kirkpatrick, II, Atlanta, Ga., for A. H. Robins Co.

Before FAY and KRAVITCH, Circuit Judges, and YOUNG*, District Judge.

KRAVITCH, Circuit Judge:

In this diversity action, appellant Carolyn Ballew appeals from the district court's

would giving it the meaning suggested by defendant.

* Honorable George C. Young, U.S. District Judge for the Middle District of Florida, sitting by designation.

grant of summary judgment for appellees A. H. Robins Co. on the ground that the court erred in holding that her action for personal injuries was barred by the applicable Georgia statute of limitations. *Ga. Code Ann.* § 3–1004. We agree with appellant and reverse and remand for further proceedings.

## I.

Appellee A. H. Robins Co. manufactured and domestically distributed an intrauterine device [IUD] known as a Dalkon Shield from 1970 until 1974. In May of 1971, appellant's physician, a specialist in gynecology and obstetrics, fitted her with a Dalkon Shield for contraceptive purposes. At the time the Shield was inserted, appellant discussed with her physician the use of the IUD and according to her deposition was informed that the Dalkon Shield posed less of a risk of an infection than other types of IUD's.[1] Subsequent to the insertion of the Shield, appellant read an article discussing the complications that might arise if pregnancy occurred while the Shield was in place. Appellant discussed the article with her physician, and he advised her to continue using the Shield as she had not experienced any problems.

Following the death of appellant's physician sometime prior to 1977, appellant became a patient of his associate, Dr. Massey. On April 4, 1977, appellant made an emergency visit to Dr. Massey as a result of severe pain in her right side. During the examination, Dr. Massey removed the Dalkon Shield and requested a culture of the Shield. Dr. Massey diagnosed appellant as having a pelvic infection and tubo-ovarian abscess and had her admitted to the Crawford Long Hospital for treatment.

Appellant was hospitalized from April 4 through April 19, 1977. During her hospitalization, Dr. Massey and his associates explained to her their diagnosis, which was confirmed by the culture of the Dalkon Shield. Appellant specifically asked her attending physicians whether the Shield caused the infection. Her treating physician stated by affidavit that he informed her at that time that he could not say whether or not the IUD was causally related to the infection. Appellant stated in her deposition that three other physicians she queried responded similarly. During her stay at the hospital, appellant was informed that if her condition did not improve she might have to undergo a hysterectomy.

On May 5, 1977, appellant began hemorrhaging and was again hospitalized. The hemorrhaging was caused by the interaction between the medicine she was taking for the pelvic infection and that which had been prescribed for pulmonary emboli. Subsequent to her discharge from the hospital, appellant continued to see Dr. Massey for her condition, and there was further discussion regarding a hysterectomy. Appellant sought a second opinion from another physician, who after examining her concurred with Dr. Massey's diagnosis and his prescribed treatment. A total hysterectomy was performed on appellant on September 19, 1977.

In January of 1978, appellant read a newspaper article in the Atlanta Journal and Constitution about a suit filed against A. H. Robins by an Alabama couple for injuries allegedly sustained as a result of the Dalkon Shield. The article did not identify the specific injuries but did state that the woman alleged she could never have children. Nor did the article mention the plaintiffs' address, the federal court in which the case was filed, or the name of the plaintiffs' attorney. Nevertheless, appellant contacted the couple to inquire about their lawsuit and was referred to their attorney. He advised appellant that she might have a cause of action against Robins and that Robins had committed fraud in the marketing of the Dalkon Shield.

---

1. The deposition indicates that appellant was aware of some general risk of infection associated with IUD's, but was not informed that use of the Dalkon Shield posed a risk of pelvic infection and tubo-ovarian abscess, which might result in a total hysterectomy.

Appellant filed this suit on June 12, 1979, seeking recovery from A. H. Robins Co. and Dr. Hugh J. Davis,[2] one of the inventors of the Dalkon Shield, for negligence, strict liability in tort, breach of express and implied warranties, fraudulent misrepresentations and nondisclosures, malicious misrepresentations and nondisclosures, and civil conspiracy to defraud. Appellee moved for summary judgment on the grounds that appellant's personal injuries claims were barred by a two year statute of limitations, *Ga. Code Ann.* § 3–1004, and that her contract claims were barred by a four year limitations period. *Ga. Code Ann.* § 109A–2–725. The district court granted appellee's motion for summary judgment on both the personal injuries and contract claims. On appeal, appellant argues only that the district court erred in granting summary judgment on her personal injuries claims.

### II.

The sole issue on appeal is whether the district court properly dismissed appellant's personal injuries claims on summary judgment on the ground that the claims were barred by Georgia's statute of limitations governing actions for personal injuries. The statute provides that "[a]ctions for injuries to the person shall be brought within two years after the right of action accrues...." *Ga. Code Ann.* § 3–1004. The district court found as a matter of law that appellant's cause of action accrued in April of 1977—when appellant was hospitalized for her pelvic infection and tubo-ovarian abscess—more than two years prior to the institution of this suit on June 12, 1979. It concluded that appellant's inquiry during her hospitalization into whether her injuries were caused by the IUD evidenced a suspicion of a causal link between her infection and the Dalkon Shield and that the equivocal responses of her physicians were enough to prompt further inquiry. On this basis,

the court held that the statute of limitations was triggered. Appellant argues that the district court's holding was erroneous because at the very least there is a genuine factual dispute that should be submitted to the jury over whether the cause of action accrued in April, 1977 or in January, 1978, when appellant read of the Alabama lawsuit against appellee and contacted the plaintiffs involved in that litigation.

◼ The Georgia courts have held that in the instance of a continuing tort, such as the one involved here, "a cause of action does not accrue so as to cause the statute of limitations to run until a plaintiff discovers or with reasonable diligence should have discovered that he was injured." *King v. Seitzingers, Inc.,* 160 Ga.App. 318, 287 S.E.2d 252, 254 (1982). *See, e.g., Everhart v. Rich's, Inc.,* 229 Ga. 798, 194 S.E.2d 425 (1972); *Parker v. Vaughan,* 124 Ga.App. 300, 183 S.E.2d 605 (1971); *Forgay v. Tucker,* 128 Ga.App. 497, 197 S.E.2d 492 (1973). Nor will a cause of action accrue until the plaintiff knew or through the exercise of reasonable diligence should have discovered the causal connection between the injury and the alleged negligent conduct of the defendant. *King v. Seitzingers, Inc., supra,* 287 S.E.2d at 254–55. Here we are concerned with whether or not prior to June 12, 1977 appellant knew or with reasonable diligence should have discovered the causal connection between her injuries and appellee's alleged misconduct. This question is a matter of fact for the jury. *King v. Seitzingers, Inc., supra,* 287 S.E.2d at 255. Hence, summary judgment is appropriate only if there is no genuine issue of material fact. *Pharo v. Smith,* 621 F.2d 656, 664 (5th Cir. 1980).

◼ In deciding whether summary judgment was proper in this case, we must view the evidence and draw all inferences in the light most favorable to the party resisting

---

**2.** The district court granted defendant Hugh Davis' motion to dismiss, and appellant does not appeal the dismissal.

the motion. *Pharo v. Smith, supra,* at 664. In so doing, we find that the district court erred in concluding as a matter of law that appellant's cause of action accrued as of April, 1977. Although the evidence of events preceding and during appellant's hospitalization of April, 1977 could support a finding that appellant knew or with reasonable diligence should have discovered the causal relationship between her injuries and the Dalkon Shield, the evidence is equally susceptible of showing that appellant did not know that the Shield was causally connected to her injuries and that any suspicion she had was quashed when in the exercise of reasonable diligence she asked her physicians about a possible connection and they responded equivocally. Moreover, the events following appellant's April, 1977 hospitalization provide further support for the conclusion that prior to June, 1977 appellant did not know and with reasonable diligence should not have discovered the relationship between her injuries and the Dalkon Shield. Appellant's efforts in pursuing the January, 1978 newspaper article on the Alabama Dalkon Shield litigation, while not conclusively showing that the cause of action did not accrue until after June, 1977, does indicate that appellant was without knowledge of a relationship between her injuries and the Dalkon Shield and that she was exercising reasonable diligence in trying to ascertain whether her injuries were caused by the Shield. Furthermore, appellant introduced evidence that not until September 25, 1980 did appellee officially notify physicians of the possible relationship between the Dalkon Shield and pelvic infection. This evidence raises the question whether appellant through reasonable diligence should have discovered the causal connection between her injuries and the Dalkon Shield prior to January, 1978, when she was expressly informed of the relationship by the Alabama plaintiffs and their attorney. In light of the foregoing, we hold that there is a genuine issue of fact as to when appellant knew or with reasonable diligence should have discovered the causal relationship between her injuries and appellee's alleged misconduct. Thus, the district court erred in granting summary judgment for appellee on the ground that appellant's cause of action accrued more than two years prior to the institution of this suit. Accordingly we reverse and remand for further proceedings.

REVERSED and REMANDED.