**U–HAUL INTERNATIONAL, INC., A Nevada Corporation, Plaintiff,**

v.

**Ed KRESCH, Simon Kresch, Neu–Monics and Centre 40 Trucking, Jointly and Severally, Defendants.**

Civil Action No. 94–40562.

United States District Court,
E.D. Michigan,
Southern Division.

Oct. 29, 1996.

Susan C.V. Jones, Jeffer, Mangels, Butler & Marmaro, Los Angeles, CA, Steven B. Galbraith, Laura A. Phillips, Galbraith & Booms, Southfield, MI, for U–Haul Co.

Julie A. Greenberg, Gifford, Krass, Groh, Sprinkle, Patmore, Anderson & Atkowski PC, Birmingham, MI, for Centre 40 Trk.

Simon P. Kresch, Kresch & Kresch, Southfield, MI, for Neu–Monics.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

GADOLA, District Judge.

Before the court is the defendants' Renewed Motion For Summary Judgment dated August 8, 1996 and the defendants' Motion To Set Aside Standing Discovery Orders dated July 17, 1996. For the reasons set out below, this court will grant defendants' motion for summary judgment. As such, the defendants' motion to set aside standing discovery orders is moot.

### I. Factual and Procedural Background

This action is brought by U–Haul International, Inc. against one of its former dealers, Centre 40 Trucking, for trademark infringement and unfair competition under 15 U.S.C. § 1114(1)(a) and 15 U.S.C. § 1125(a). ("The Lanham Act")

The U–Haul Rental System, established in 1942 as a small truck and trailer operation, has continually expanded in size and sales revenue to the point today where this system includes over 1200 company owned U–Haul centers and 12,000 independent dealers throughout Canada and the United States. Plaintiff registered the "U–Haul" mark with the United States Patent and Trademark Office. Plaintiff has spent millions of dollars worldwide in advertising and promoting the service mark "U–HAUL."

According to the second amended complaint, U–Haul has promoted the "vanity" number 1–800–GO–U–HAUL (1–800–468–4285) as a nationwide toll free telephone number for reservation services for the past nine years. The complaint also alleges that U–Haul's annual budget for this vanity number is approximately $3.5 million.

The complaint is premised upon the defendants' alleged violation of the U–Haul trademark through the use of three telephone numbers, 1–800–408–4255, 1–800–468–4225 and 1–800–408–4285. The numbers were ac-

quired by the defendants on July 29, 1994, December 23, 1993 and December 9, 1993, respectively, and can be translated into the following alphanumeric representations: (1) G[zero]–U–HALL; (2) GO–U–HALL; and (3) G[zero]–U–HAUL, which are similar to the plaintiff's 800 vanity number and are allegedly often misdialed by customers attempting to reach the plaintiff's national reservation system. These numbers are known in the trade as "complementary numbers."

In January 1994, plaintiff U–Haul International, Inc. ("U–Haul") entered into a contract with defendants Ed Kresch ("Kresch") and Centre 40 Trucking to allow Centre 40 Trucking to conduct operations as a U–Haul dealership. On October 1, 1994, the plaintiff terminated that contract, effective October 31, 1994, following discussions between Dave Lyjak ("Lyjak"), U–Haul's area field manager, and Kresch concerning U–Haul's concerns about potential trademark problems arising out of Centre 40's use of the complementary telephone numbers.

On October 24, 1994, plaintiff sent a letter to the defendants, requesting that the defendants cease using plaintiff's trademarks and the telephone number "800–GO–U–HALL." Defendants continued to use the telephone number 800–468–4255. On January 31, 95, U–Haul filed a second amended complaint, alleging trademark infringement in violation of 15 U.S.C. § 1114(1)(a) and false descriptions and representations in violation of 15 U.S.C. § 1125(a).

Since the filing of the second amended complaint this court has considered and denied three motions for summary judgment filed by the defendants. On February 17, 1995, this court denied the defendants' first Motion for Summary Judgment[1] stating that:

> Until discovery is finished and the parties have clearly presented the facts to this court, the court cannot make a final determination as to summary judgment on

whether defendant's use of the complementary telephone lines constitute violations of sections 1114 or 1125.

*U–Haul International, Inc. v. Kresch,* 875 F.Supp. 1307, 1311 (E.D.Mich.1995). In that opinion, this court also recognized the factual similarity between the instant case and *Holiday Inns, Inc. v. 800 Reservation, Inc.,* 838 F.Supp. 1247 (E.D.Tenn.1993). In that case, the trial court had found a Lanham Act violation. However, the trial court, in *Holiday Inns,* has since been reversed by the Sixth Circuit in *Holiday Inns, Inc. v. 800 Reservation, Inc. et al.,* 86 F.3d 619 (6th Cir.1996). ("Holiday Inns").

This court also denied the defendants' Renewed Motion for Summary Judgment, filed on May 30, 1995. In an order issued on August 8, 1995, this court noted the acrimonious conduct of discovery since the February 17, 1995 Order. Plaintiff contested the renewed motion for summary judgment on the ground that discovery had not finished and that the defendants had prevented plaintiff from deposing the defendants and from obtaining crucial documents such as defendants' phone bills and advertisements of the defendants' complementary telephone numbers. Because the discovery date had been extended to August 15, 1995 by an amendment to the pretrial scheduling order on May 30, 1995, this court denied the motion for summary judgment and sanctioned the defendants $1,500.00 for the costs incurred by the plaintiff in defending the motion.

This court also denied defendants' second renewed motion for summary judgment on November 3, 1995 finding that the defendants' motion simply reargued the same facts and law presented in the previous two motions, and that the only issue was whether discovery had actually been completed. This court also extended the discovery cut-off date to January 31, 1996 in light of the two orders by Magistrate Judge Morgan relating to discovery, which were issued after the formal cut-off date for discovery of August 15, 1995.[2]

---

**1.** The defendants' first Motion for Summary Judgment was based upon the plaintiff's first amended complaint.

**2.** On September 25, 1995, Magistrate Judge Morgan issued an Order Granting In Part Plaintiff's

Motion to Compel, requiring the defendants to produce an affidavit stating that they have given the plaintiffs all documents in their possession which could possibly be responsive to the plaintiffs' requests for advertising records and telephone bills.

Since the November 3, 1995 denial of defendants' second renewed motion for summary judgment, Magistrate Judge Morgan issued a report and recommendation ("R & R") dated July 3, 1996 which this court adopted in part and modified in part by order dated July 23, 1996.[3] That order was modified on October 15, 1996 upon a motion for reconsideration by the plaintiff.[4]

## II. Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the non-moving party's case on which the non-moving party would bear the burden of proof at trial. *Martin v. Ohio Turnpike Commission*, 968 F.2d 606, 608 (6th Cir.1992); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In considering a motion for summary judgment, the court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the non-moving party. *60 Ivy Street Corporation v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987). The court is not required or permitted, however, to judge the evidence or make findings of fact. *Id.* at 1435–36. The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *Id.* at 1435.

On October 13, 1995, Magistrate Judge Morgan issued an Order Granting Plaintiff's Motion to Modify Confidentiality Order which permitted the plaintiffs to investigate more fully the defendants' use of numerous "complementary" telephone lines. Magistrate Judge Morgan noted the defendants' failure to voluntarily engage in discovery required the entry of several orders compelling cooperation and concluded that this court's February 17, 1995 order denying defendant's motion for summary judgment demonstrated the need for full discovery in this action "to determine the validity of plaintiff's claims."

3. This court accepted the magistrate judge's recommendation that Rule 37 sanctions were appro-

A fact is "material" for purposes of summary judgment where proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984). In other words, the disputed fact must be one which might affect outcome of the suit under the substantive law controlling the issue. *Henson v. National Aeronautics and Space Administration*, 14 F.3d 1143, 1148 (6th Cir.1994). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* Accordingly, where a reasonable jury could not find that the non-moving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *Feliciano v. City of Cleveland*, 988 F.2d 649 (6th Cir. 1993).

Once the moving party carries its initial burden of demonstrating that no genuine issues of material fact are in dispute, the burden shifts to the non-moving party to present specific facts to prove that there is a genuine issue for trial. To create a genuine issue of material fact, the non-moving party must present more than just some evidence of a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986):

There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the [non-moving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

priate in light of the defendants' calculated and unjustified refusal to cooperate in discovery. However, this court did not accept the magistrate judge's recommendation that the defendants' answer be stricken and that a default judgment entered against them. Instead, this court found that monetary sanctions of $10,000 were appropriate.

4. The order was modified by increasing monetary sanctions from $10,000 to $22,750 based on a showing of reasonable attorneys fees submitted by the plaintiff.

(Citations omitted); *see also Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). Consequently, the non-moving party must do more than raise some doubt as to the existence of a fact; the non-moving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.,* 738 F.Supp. 214, 217 (E.D.Mich.1990), *aff'd,* 929 F.2d 701 (6th Cir.1991).

## III. Analysis

There are only two surviving claims in the instant action. One alleges violation of § 1114 of the Lanham Act, ("Trademark Infringement") and the other alleges violation of § 1125(a) of the Lanham Act ("Unfair Competition"). It appears that neither claim can survive summary judgment in light of the recent ruling of the Sixth Circuit Court of Appeals in *Holiday Inns, Inc. v. 800 Reservation, Inc. et al.,* 838 F.Supp. 1247 (E.D.Tenn.1993), *reversed* 86 F.3d 619 (6th Cir.1996).

### The Holiday Inns case

In *Holiday Inns,* Holiday Inns, Inc., filed a Lanham Act suit against the defendants, alleging unfair competition and infringement of its trademark "vanity number," 1–800–HOLIDAY. The defendants had secured the use of and were engaged in using a "complementary number" that potential Holiday Inns customers frequently dialed by mistake when they unintentionally substituted the number zero for the letter "O." That number, 1–800–405–4329 ("the 405 number"), corresponded to the alphanumeric 1–800–H[zero]LIDAY. The Holiday Inns numeric was 1–800–465–4329. The district court granted Holiday Inns partial summary judgment and permanently enjoined the defendants from using the 405 number reasoning that the defendants were using the Holiday Inns mark in an "insidious and parasitic manner.... [which] seems to be a clear violation of the spirit, if not the letter, of the Lanham Act." *Holiday Inns,* 838 F.Supp. at 1255.

The Sixth Circuit reversed the lower court's decision in its entirety concluding that "although Holiday Inns owns trademark rights in its vanity number, 1–800–HOLIDAY, it cannot claim such rights to the 405 number." *Holiday Inns,* 86 F.3d at 625. In its decision, the Sixth Circuit emphasized that the defendants had never *used* the Holiday Inns' trademark (1–800–HOLIDAY) when it operated and advertised the 405 number nor did they *create* the confusion which caused potential Holiday Inns customers to misdial. Both use of the mark and creation of the confusion regarding the mark, the Sixth Circuit held, are "prerequisites" to the finding of a Lanham Act violation. Id. at 626. Specifically, the court held:

> The plain language of § 32 of the Lanham Act forbids only the "*use* in commerce [of] any reproduction, counterfeit, copy, or colorable imitation of a registered mark ... which ... is likely *to cause* confusion." 15 U.S.C. § 1114. Additionally, § 43(a) of the Act provides a cause of action only against "[a] person who ... *uses* in commerce any word, term, name, symbol, or device ... or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact...." 15 U.S.C. § 1125(a). The defendants in this case never *used* Holiday Inns's trademark nor any facsimile of Holiday Inns's marks. Moreover, the defendants did not *create* any confusion; the confusion already existed among the misdialing public.

*Holiday Inns,* 86 F.3d at 625 (emphasis in the original). It is noteworthy that the Sixth Circuit recognized that Holiday Inns, like U–Haul in the instant case, "had neglected to take the simple precaution of reserving its complementary number—a practice which many of its competitors have chosen to take." *Id.*

In the instant case, U–Haul essentially makes three arguments. First, U–Haul claims that Kresch violated the Lanham Act by using the complementary telephone numbers. Next, U–Haul claims that Kresch violated the Lanham Act during the pendency of the dealership by using the "U–Haul" mark in an unauthorized manner, to wit: by answering the phone and saying "U–Haul" instead of "Centre 40 trucking ... an authorized U–Haul dealership." Finally, U–Haul

argues that Kresch violated the Lanham Act after the termination of the dealership by playing recorded messages which unfairly competed with U–Haul and made misrepresentations about U–Haul designed to confuse callers.

### 1. Trademark Infringement Claim

#### A. Use of complementary numbers

■ Count Three of plaintiff's complaint alleges that defendants infringed upon U–Haul's trademark by using complementary numbers to U–Haul's vanity number, 1–800–GO–U–HAUL. This claim does not warrant a protracted analysis by this court. Simply put, in light of the Sixth Circuit's opinion in *Holiday Inns,* such a claim can no longer be supported by law and summary judgment is appropriate on this claim. The clear holding of *Holiday Inns* mandates that, despite its ownership of trademark rights in the vanity number 1–800–GO–U–HAUL, U–Haul cannot claim trademark rights in the complementary numbers. *See Holiday Inns,* 86 F.3d at 625. Therefore, any claim that the defendants "used" complementary numbers is legally insufficient and summary judgment should be entered on such a claim.

Furthermore, U–Haul's attempt to distinguish the *Holiday Inns* case from the instant case is unavailing. It is noteworthy that U–Haul, throughout this litigation, has asserted that the *Holiday Inns* case, prior to being reversed by the Sixth Circuit, was highly persuasive authority and was directly on point. For instance, in pleadings submitted on December 16, 1994, U–Haul stated that "that case [*Holiday Inns* ] is identical to this case in all respects." In pleadings submitted on June 13, 1995, U–Haul stated that "through discovery, the instant case has proved to be closely analogous to the *Holiday Inns* case." Nevertheless, U–Haul now argues that *Holiday Inns* is distinguishable, *inter alia,* because the defendants in *Holiday Inns* made attempts, or at least more substantial attempts, to alleviate consumer confusion than the instant defendants. U–Haul points to the recorded message played upon dialing one of the complementary numbers in the *Holiday Inns* case which stated as follows: "Hello. You have misdialed and *have*

*not reached Holiday Inns* or any of its affiliates." *Holiday Inns,* 86 F.3d at 621. (emphasis supplied by U–Haul) In the instant case, U–Haul argues, the defendants did not undertake the same efforts to dispel any consumer confusion that may have existed.

U–Haul misapprehends the Sixth Circuit's clear holding in *Holiday Inns* which does not hinge upon the defendants' efforts to reduce or eliminate any caller confusion. While the Sixth Circuit acknowledged that the *Holiday Inns* defendants "may have helped dispel the confusion by ... informing the customers of their error," *Holiday Inns,* 86 F.3d at 625, the Sixth Circuit held that "the defendants did not *create* any confusion; the confusion already existed among the misdialing public." *Id.* (emphasis in the original). Moreover, the Sixth Circuit held that "the defendants' use of a protected mark ... is a *prerequisite* to the finding of a Lanham Act violation. Absent such a finding, the eight-factor [likelihood of confusion] test of *Frisch's Restaurants, Inc.* is irrelevant." *Id.* at 626. Since the Sixth Circuit's holding in *Holiday Inns* did not rest upon a finding that the defendants therein sufficiently "dispelled" caller confusion, U–Haul can not credibly distinguish *Holiday Inns.* This court finds that the Sixth Circuit's reference to "dispelling confusion" in *Holiday Inns* is merely dictum.

U–Haul also attempts to evade the impact of the *Holiday Inns* decision by contending that the Sixth Circuit's opinion in *Holiday Inns* has only addressed one half of the dispute in the instant case. U–Haul, through the course of this litigation, has "switched gears" somewhat, from its original position, that the use of the complementary numbers was a violation of the Lanham Act, and now contends that the defendants have also infringed on the trademark name—"U–Haul"—both before and after the termination of the dealership. While the crux of the plaintiff's second amended complaint is plainly based upon the defendants' use of the complementary numbers, plaintiff has asserted several "background arguments" which it claims allege Lanham Act violations. As such, this court will proceed to address those "other" claims.

### B. Trademark Infringement Before Termination of the Dealership

■ Plaintiff alleges that defendants misused the U–Haul trademark while they were an authorized dealership by answering the phone "U–Haul," even though they were instructed by Lyjak, to answer calls by identifying themselves as "... Centre 40 Trucking. We are an authorized U–Haul Dealer." *See* Affidavit of David Lyjak, June 9, 1995, ¶ 7. Plaintiff argues that this is a genuine issue of material fact relating to the issue of whether defendants represented themselves to the public as "U–Haul" in an unauthorized manner.

Defendants, on the other hand, argue that U–Haul's own literature instructed them to identify themselves merely as "U–Haul." The defendants point to a U–Haul customer service form which includes a script instructing the dealer to answer as follows:

> Thank you for calling *U–Haul* ®. This is _____. *U–Haul* Has The Right Equipment At The Lowest Cost.... (emphasis added)

and

> If no credit card, say, "It's a good thing you called *U–Haul* because we accept checks by mail.... *U–Haul* also accepts cash and money-orders." (emphasis added)

Additionally, the defendants point to U–Haul's Dealer Operation Manual which specifically instructs its dealers that:

> If you have a special phone number for U–Haul prospects, answer it by saying, "Thank you for calling *U–Haul.* This is...."

The Dealer Operation Manual also stresses the appropriateness of its dealers holding themselves out to be "U–Haul" by emphasizing the identity between the dealers and the U–Haul corporation. For instance, page 2 of the U–Haul Dealer Operation Manual states: "To the general public, the dealer *is* U–Haul." (emphasis in the original).

Finally, this court notes the deposition testimony of Mr. Gilray, President of U–Haul Co. of Michigan, which states as follows:

Q. And now, dealers are supposed to identify themselves as—or how are they supposed to identify themselves when called?

A. U–Haul. "Thank you for calling U–Haul."

Q. So they are supposed to say they're U–Haul?

A. Yes.

Q. Are they supposed to say—let's say I call any dealer within your jurisdiction and say, "Is this U–Haul?" How do they answer that? What would you directly—

A. ... Hopefully they'll say "U–Haul".

\* \* \* \* \* \*

Q. So how to answer the telephone is part of the training, is that right?

A. Using our customer service form.

\* \* \* \* \* \*

Q. So you have a script that you expect the dealer to basically read when someone calls in?

A. It's a script, yes. I guess you could put it that way. It's a guideline.

\* \* \* \* \* \*

Q. And does it say anywhere there that a dealer is told to clearly identify to anyone who calls that he's calling a U–Haul dealer and not U–Haul International rate line in Phoenix?

A. Well, when they call U–Haul they figure they're—you know, when its answered. "Thank You for calling U–Haul," they figure they're talking to U–Haul, yes.

Q. Okay. Are they, in fact talking to U–Haul, sir?

A. They're talking to a dealer, yes.

As it must, this court will view this evidence in a light most favorable to the plaintiff and draw all reasonable inferences in its favor. To be sure, there is a question of fact as to how defendants were told to identify themselves when answering the phone. However, this question of fact is created by U–Haul itself. It is clear from the plaintiff's own literature and the testimony of its own

employees, that their dealerships are permitted to identify themselves as "U–Haul."

■ It is generally established that, under Rule 56, a party may not create a genuine issue of material fact by submitting an affidavit, after a motion for summary judgment has been made, containing conclusory allegations that contradict prior admissions or deposition testimony. *See Dotson v. United States Postal Service*, 977 F.2d 976, 978 (6th Cir.1992) (plaintiff's affidavit opposing summary judgment, which contradicted prior statements that he was "fired" from prior employment, failed to create a genuine issue of material fact in a Title VII wrongful termination action); *United States v. Certain Real Property*, 791 F.Supp. 171, 173 (E.D.Mich. 1992) (defendant's affidavit contradicting admissions in deposition testimony concerning knowledge of illegal drug activities deemed insufficient to create a genuine issue of material fact). *See also Miller v. A.H. Robins Co., Inc.*, 766 F.2d 1102, 1105 (7th Cir.1985) ("Parties cannot thwart the purpose of Rule 56 by creating issues of fact through affidavits that contradict their own depositions."). *Cf. Francis v. Gaylord Container Corp.*, 837 F.Supp. 858, 864 (S.D.Ohio), *aff'd*, 9 F.3d 107 (1992) (contradictory post-deposition affidavits by a witness are improper and should not be considered by the court in deciding the summary judgment motion) (citing *Gagne v. Northwestern Nat'l Ins. Co.*, 881 F.2d 309, 315 (6th Cir.1989)); *Adelman–Tremblay v. Jewel Companies, Inc.*, 859 F.2d 517 (7th Cir.1988) (applying rule to affidavits submitted by the nonmovant's sole expert witness which contradict the prior deposition testimony of the nonmovant).

U–Haul simply cannot create a genuine issue of fact that is material to this case through the affidavit of David Lyjak. As U–Haul's own literature and Gilray's quoted testimony demonstrate, U–Haul has clearly authorized its dealers, including Centre 40 trucking, to state that they are a U–Haul dealership and, moreover, that they were expressly authorized to answer the telephone referring to themselves simply as U–Haul.[5] U–Haul cannot credibly argue that those representations were either equivocal or ambiguous. As such, U–Haul may not rely on Lyjak's affidavit to create a genuine issue of material fact for purposes of defeating the plaintiff's motion for summary judgment.

This court stated, in its August 7, 1995 opinion, that: "[i]f discovery shows that plaintiffs clearly informed defendants that defendants were required to state that they were a U–Haul dealership, then defendants may have exceeded the bounds of their authorized use of plaintiffs' trademark and would be liable for trademark infringement." Since this court concludes that plaintiff has failed to show that there is a material fact in dispute as to whether defendants exceeded the bounds of their authorized use of plaintiff's trademark, summary judgment is appropriate on this claim.[6]

**2. Unfair Competition Claim**

At the outset, it should be noted that, in its August 7, 1995 opinion, this court stated that:

that defendants have ever promoted the complementary numbers by using an alphanumeric." However, this court stated that it was "possible that customers may provide information about whether defendants had advertised their complementary numbers using an alphanumeric." It is now over one year later and, while the defendants' conduct during discovery as been far less than exemplary, there has, nevertheless, been no evidence that the defendants have advertised their complementary numbers using an alphanumeric. In fact, the defendants have produced several representative advertisements, published during the dealership period, which show that only the numeric—and not the alphanumeric—was used. Plaintiff has put forth no evidence that the defendants used an alphanumeric, therefore summary judgment is appropriate on this claim.

---

5. U–Haul's argument that the above quoted language from the dealer operation manual only applies to those dealers that had a "U–Haul company owned phone number" belies a plain reading of the U–Haul literature which states:

If you have a *special phone number* for U–Haul prospects, answer it by saying, "Thank you for calling *U–Haul*. This is...." (emphasis added)

6. U–Haul appears to have abandoned any trademark infringement claim based on the defendants' advertising of the complementary telephone numbers by using an alphanumeric. Regardless, U–Haul has failed to put forth any evidence that would support such a claim. When this court issued its August 7, 1995 opinion, it stated: "At this time, there is no proof

In contrast to section 1114, section 1125 does not require plaintiffs to prove that defendants *used* plaintiffs' trademark.... In order to succeed in this action, the plaintiffs will have to prove that confusion existed between their vanity number and defendants' complementary number. (citation omitted) Defendants' *intent* is critical because if defendants' behavior is attempting to derive benefit from the reputation of the plaintiff, "that fact alone may be sufficient to justify the interference that there is confusing similarity." (emphasis added)

■ At that time, the issue of what constitutes an unfair competition claim based on complementary numbers under § 1125 was one of first impression in this Circuit. However, in light of the Sixth Circuit's opinion in *Holiday Inns*, it is clear that "the defendants' use of a protected mark or their use of a misleading representation is a *prerequisite* to the finding of a Lanham Act violation." *Holiday Inns*, 86 F.3d at 626. (emphasis in the original) As such, this court cannot look to the defendants' *intent* as a ground for a § 1125 violation, but must first find an *actual use* of the mark or use of a *misleading representation*.

■ In an attempt to defeat the defendants' motion for summary judgment on the unfair competition claim, the plaintiff proffers, generally, four arguments. First, plaintiff alleges that, because defendants owned the complementary numbers prior to their acquisition of a U–Haul dealership and because they maintained the numbers after their termination, they were competing with U–Haul both before and after their period of service as an authorized U–Haul dealer. In light of *Holiday Inns*, this argument has no merit. *Holiday Inns* makes it clear that owning a complementary number, alone, is not a violation of the Lanham Act. Instead, a showing of actual use of the mark, i.e., the vanity number, must be made. That, plaintiff has failed to do.

■ Second, plaintiff alleges that there is a genuine issue of material fact as to whether the defendants unfairly competed with U–Haul after termination as a dealer by misrepresenting themselves as U–Haul and directing misdialers to U–Haul's competitors. Such allegations, if supported by the facts could satisfy the "use of a misleading representation" requirement under *Holiday Inns*. Plaintiff, however, has failed to advance any facts to support this contention or to bring this case into the *Holiday Inns* holding. Plaintiff points to two recorded messages played on the defendants' telephone lines. The first message states:

We are no longer accepting U–Haul reservations. For quality one-way truck rentals, please call 1–800–GO–RYDER. If you must reach U–Haul, please call 313–467–3275.

The second message states:

You have reached centre 40 Truck Rental. We regret to

advise you that we have been unilaterally terminated without cause as an authorized U–Haul dealer by U–Haul International. We will thus be unable to serve our customers. We sincerely regret any inconvenience to you. We hope our differences with U–Haul will be amicably resolved so that we will again be given the opportunity to provide quality truck rental services for our customers in the years to come. In the interim you may wish to support us by calling 1–800–GO–RYDER for your next one-way truck rental. If you want to hear U–Haul's side of the story, or specifically require a U–Haul rental, please call 313–467–3275. Your support will be greatly appreciated.

In its February 17, 1995 opinion, this court rejected plaintiff's argument that the messages cause customers to believe that they have reached U–Haul. This court stated:

Both messages clearly explain that the party reached is not U–Haul. Also, both messages clearly provide callers with the number at which customers can reach U–Haul. The reference to U–Haul explains that U–Haul is *not* the sponsor of the message or the party answering the line. Thus, defendants are explicitly informing the public that U–Haul is not the sponsor of the goods that they are providing. (citation omitted) (emphasis in the original)

Plaintiff has produced no additional evidence that should alter this court's conclusion that

the defendants did not make a misleading representation.

■ Third, plaintiff contends that the statement in the second message, that U–Haul terminated defendants "without cause," is false and damaging to U–Haul. In support of that proposition, plaintiff offers the affidavit of Mr. Yerkes, a professor of English and Comparative Literature at Columbia University, who concludes that the phrase "without cause" is "extremely misleading." While use of the phrase "without cause" is arguably misleading about the circumstances of the termination of the dealership, it is not misleading for the purposes of a § 1125 violation. In other words, the phrase "without cause" is not a misleading representation concerning the "U–Haul" mark as required under the statute.

Specifically, the phrase "without cause" is not a misleading representation concerning the "affiliation, connection, or association of ... [the defendants] with ... [U–Haul];" nor does it address the "origin, sponsorship, or approval of ... [the defendants'] goods, services, or commercial activities by ... [U–Haul]...." *See* 15 U.S.C. § 1125(a)(1). A plain reading of the text of the recording shows that defendants are, instead, referring to the circumstances of the termination because they direct the listener to U–Haul to "hear U–Haul's side of the story...." Furthermore, the defendants do not misrepresent "the nature, characteristics, qualities, or geographic origin of [the defendants' or U–Haul's] goods, services, or commercial activities...." *See* 15 U.S.C. § 1125(a)(2). In fact, the natural inference to make from the second recording is that U–Haul provides "quality truck rental services...."

7. Moreover, it would defy logic for the defendants to solicit customers by offering U–Haul goods or services after the dealership arrangement had been terminated as the defendants no longer had access to U–Haul equipment.

8. To the extent that this holding is in conflict with this court's February 17, 1995 opinion which stated that "[a]lthough [the recorded messages] are not advertisements, they clearly promote the sale of goods by referring customers to Ryder," the instant opinion is, of course, superseding.

■ Similarly, plaintiff argues that the defendants' phone recordings, which encouraged misdialers to call U–Haul's competitors, constitute false representations in connection with the sale of goods or services. However, *Gordon and Breach v. American Institute of Physics,* 859 F.Supp. 1521 (S.D.N.Y.1994), and cases cited therein, make it clear that, although Section 1125 "applies to a broad range of misrepresentations, it 'does not have boundless application ... but is limited to false advertising as that term is generally understood.'" *Gordon,* 859 F.Supp. at 1532 (quoting *Alfred Dunhill Ltd. v. Interstate Cigar Co.,* 499 F.2d 232, 237 (2d Cir.1974)). Moreover, the *Gordon* court stated, "only commercial speech that a competitor employs for the express purpose of influencing consumers to buy the competitor's goods or services is actionable under section [1125]." *Gordon,* 859 F.Supp. at 1533 (quoting citation omitted) (emphasis added). Assuming, *arguendo,* that the defendants were competitors of U–Haul at the time these recordings were being played, it is, nevertheless, clear that the defendants' did *not* intend to influence consumers to buy their goods or services. The most that can be said of the defendants' conduct is that they played the role of a spoiler by sending calls that would otherwise go unanswered to Ryder instead of U–Haul. Plaintiff has not shown that callers, who may have heard the recordings, were influenced to buy the defendants' goods or services.[7] Therefore, it cannot be said that defendants made any misrepresentations sufficient to find a § 1125 violation.[8]

Finally, U–Haul argues that several other questions of fact exist in this case. Upon review, this court finds that those arguments are even less persuasive than the four arguments discussed above.[9]

9. For instance, Plaintiff contends that there is a question of fact as to whether Kresch told Lyjak or Jody Keasler, Senior Area Field Manager for U–Haul, that the 1–800 number he intended to use was a single digit different from U–Haul's vanity number. Whether Kresch said so or not is of no material consequence to this case. Similarly, whether Lyjak knew about the defendants' use of 800 numbers until late July 1994 is not a material fact in dispute. Likewise, plaintiff's contention that a dispute exists as to what U–Haul's policy was regarding dealers having to open a physical location is not a material fact in

## Conclusion

For the reasons discussed above, this court finds that there is no genuine dispute of material fact to be resolved in the instant action. As such, the defendants' renewed motion for summary judgment is granted in its entirety. Furthermore, in light of this opinion, defendants' motion to set aside standing discovery orders is moot.

### ORDER

Therefore, it is hereby **ORDERED** that the defendants' motion for summary judgment is **GRANTED**.

**SO ORDERED.**

### JUDGMENT

This action came before this court, the Honorable Paul V. Gadola, District Judge presiding, and the issues having been fully presented and the court being fully advised in the premises, and a decision having been duly rendered,

**IT IS HEREBY ORDERED AND ADJUDGED** that the plaintiff, U–Haul International, Inc., take nothing in this action against the defendants, Ed Kresch, Simon Kresch, Neu–Monics and Centre 40 Trucking, and that the claims contained in its January 31, 1995 second amended complaint be **DISMISSED** with prejudice.

**IT IS FURTHER ORDERED** that the clerk of the court serve a copy of this judgment by United States mail on counsel for the parties named in the caption above.

**SO ORDERED.**

dispute. Also whether Lyjak "dictated" a script to Kresch or "requested" that he instruct his employees on how to answer their telephones is certainly not material. Equally, unavailing is plaintiff's attempt to revise their allegations to include claims that Kresch used business cards with U–Haul's name on them. This allegation is too remote from any Lanham Act claim based on complementary numbers and, furthermore, is untimely at this late stage in the litigation.