[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-16600
Non-Argument Calendar

_____

D.C. Docket Nos. 4:08-md-02004-CDL,
4:13-cv-00370-CDL

In re: Mentor Corp. Obtape Transobturator Sling Products Liability Litigation.

_____

FRANCES ALVARADO,

Plaintiff - Appellant,

versus

MENTOR CORPORATION,
MENTOR WORLDWIDE LLC,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(November 16, 2017)

Before TJOFLAT, WILLIAM PRYOR and JORDAN, Circuit Judges.

PER CURIAM:

In July of 2013, Frances Alvarado brought claims against Mentor Corporation and Mentor Worldwide LLC, alleging that she was injured by Mentor's ObTape Transobturator Tape, a transvaginal mesh product designed to treat urinary incontinence. Interpreting Minnesota law, the district court found that Ms. Alvarado's claim was barred by Minnesota's six year statute of limitations for tort claims and granted summary judgment to Mentor. On appeal, Ms. Alvarado argues that the district court erred because there was a genuine dispute as to whether Ms. Alvarado knew of a causal connection between ObTape and her injury, as required by Minnesota law. After careful review, we agree with Ms. Alvarado. Therefore, we reverse the grant of summary judgment and remand for further proceedings consistent with this opinion.

## I

Because we write for the parties, we assume familiarity with the underlying record and recite only what is necessary to resolve this appeal.[1]

Ms. Alvarado received an ObTape implant in February of 2004 to treat her stress urinary incontinence. In December of 2006, she visited her primary care physician, Dr. Marc Melnik, complaining that something was protruding from her vagina. Dr. Melnik explained that the exposed material was tape and

---

[1] We recite the facts in this opinion solely for purposes of reviewing the district court's ruling below. Thus, these "are the facts for present purposes, but they may not be the actual facts." *Kelly v. Curtis*, 21 F.3d 1544, 1546 (11th Cir. 1994) (quotation marks omitted).

recommended that she see Dr. Stuart Feldman, a urologist.  She visited Dr. Feldman, who explained that the ObTape had eroded and the erosion was the cause of her vaginal discharge and recommended removing the exposed portion.  In February of 2007, Dr. Feldman excised the exposed ObTape, but did not completely remove it.  Ms. Alvarado continued to suffer complications and, in August of 2007, Dr. Mark Minkes performed a second explant surgery to remove another portion of ObTape.  According to Ms. Alvarado, no doctor explained to her that the ObTape was defective or caused her injuries.

Continuing to suffer from infection and other medical problems, Ms. Alvarado visited Dr. Cynthia Hall for another explant surgery in January of 2008. At a post-operative visit in March of 2008, Dr. Hall informed Ms. Alvarado that ObTape "wasn't good" and was not "supposed to be put [ ] in on people."  Ms. Alvarado now suffers from neuropathy, an inability to walk, and severe pelvic pain, among other injuries.

Ms. Alvarado filed her complaint in Minnesota state court on July 15, 2013. Mentor removed the case to the United States District Court for the District of Minnesota and, subsequently, the case was transferred to the Middle District of Georgia as part of a multidistrict litigation.

After discovery, Mentor moved for summary judgment arguing that Ms. Alvarado's claim was barred by Minnesota's statute of limitations.  The district

court determined that Ms. Alvarado "was aware … of an injury and its likely cause in February 2007," and therefore found the claim time barred.  Ms. Alvarado appealed the grant of summary judgment as to her negligence claim only.

## II

We review the district court's grant of summary judgment *de novo*, viewing the evidence in the light most favorable to Ms. Alvarado, the nonmoving party. *See Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1211 (11th Cir. 2008). Summary judgment is appropriate when, after adequate time for discovery, the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).   The substantive law identifies the facts that are material to a claim, and only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Thus, no genuine issue of fact exists "unless the non-moving party establishes, through the record presented to the court, that it is able to prove evidence sufficient for a jury to return a verdict in its favor."  *Cohen v. United Am. Bank of Cent. Fla.*, 83 F.3d 1347, 1349 (11th Cir. 1996) (citation omitted).

## III

This appeal requires us first to resolve when Ms. Alvarado's claim for negligence in a product liability action accrued under Minnesota law. Second, we must apply that rule to the evidence presented in this case and determine whether the district court's grant of summary judgment was appropriate.

**A**

It is undisputed that the statute of limitations for a negligence claim in Minnesota is six years. *See* Minn. Stat. § 541.05 subd. 1(5). The district court concluded that a negligence claim for product liability accrues (and the statute of limitations begins to run) "when the plaintiff learns that she has an injury caused by a product." D.E. 43 at 5. A prior panel of this Court reached the same conclusion in an unpublished (and non-precedential) decision. *See Rogers v. Mentor Corp.*, 682 F. App'x 701, 709 (11th Cir. 2017). Upon our independent review, we agree with the earlier panel and the district court concerning the issue of accrual.

Minnesota state courts have not been entirely clear on this point, but in the absence of a clear statement from Minnesota state courts, we normally defer to the Eighth Circuit and federal courts of Minnesota. *See MacGregor v. State Mut. Life Assurance Co.*, 315 U.S. 280, 281 (1942). These cases interpreting Minnesota law have established that in a product liability action, the cause of action does not accrue until there exists "(1) a cognizable physical manifestation of the disease or

5

injury, and (2) evidence of a causal connection between the injury or disease and the defendant's product, act, or omission." *Hildebrandt v. Allied Corp.*, 839 F.2d 396, 398 (8th Cir. 1987) (quoting *Karjala v. Johns-Manville Prods. Corp.*, 523 F.2d 155, 160–61 (8th Cir. 1975)).

Mentor urges us to find that Minnesota has rejected the discovery rule in favor of the damage rule of accrual. Appellees' Br. at 10–13. But the cases it cites in support are distinguishable from the product liability situation presented in *Hildebrandt*. *See MacRae v. Grp. Health Plan, Inc.*, 753 N.W. 2d 711 (Minn. 2008) (medical malpractice); *Antone v. Mirviss*, 720 N.W. 2d 331 (Minn. 2006) (legal malpractice); *Herrmann v. McMenomy & Severson*, 590 N.W. 2d 641 (Minn. 1999) (legal and accounting malpractice). *Cf. Dalton v. Dow Chem. Co.*, 158 N.W. 2d 580, 585 (Minn. 1968) ("Plaintiff has cited several malpractice cases involving claims against a physician or clinic … Cases of the foregoing nature are of a class unto themselves and fail to lend support to the plaintiff's position."). Further, we conclude, like other federal courts in Minnesota, that case law from Minnesota "has suggested in a products liability action that a cause of action will not accrue until the plaintiff has some evidence of causation, though evidence need not be definitive." *Huggins v. Stryker Corp.*, 932 F. Supp. 2d 972, 985 (citing *Dalton*, 158 N.W. 2d at 584). And we note that the Minnesota Supreme Court has never disavowed *Hildebrandt*'s interpretation of Minnesota law.

6

**B**

Having concluded, as did the district court, that the statute of limitations begins to run when there is evidence of a causal connection between Ms. Alvarado's injury and the ObTape, we must now address whether there exists a genuine dispute of fact as to when Ms. Alvarado's cause of action accrued. Viewing the evidence in the light most favorable to Ms. Alvarado, and drawing all justifiable inferences in her favor, we conclude that material facts are in dispute and, accordingly, summary judgment was inappropriate.

> The district court concluded:

> Alvarado was informed in December 2006 that she had an erosion of her ObTape, that the erosion was likely causing her vaginal discharge symptoms, and that she would have to undergo an excision procedure. And in February 2007, Alvarado's doctor excised her exposed ObTape. This information was enough to put Alvarado on notice that she had suffered an erosion necessitating an excision procedure . . . . Thus, by February 2007 at the latest, Alvarado should have known that she needed treatment for injuries related to an erosion of the ObTape. In other words, she was aware (or should have been aware) of an injury and its likely cause in February 2007.

D.E. 43 at 6. This narrative failed to consider the facts in the light most favorable *to Ms. Alvarado*. *See Schwarz*, 544 F.3d at 1211. Considering all of the facts under this standard, the evidence is not "so one-sided that [Mentor] must prevail as a matter of law." *Anderson*, 477 U.S. at 248. The facts suggest Dr. Feldman

7

informed her that the erosion was causing her discharge, but until Ms. Alvarado's meeting with Dr. Hall in March of 2008, no doctor was certain whether or not he told Ms. Alvarado about a causal connection between her injuries and *the ObTape*. And, Ms. Alvarado testified that no doctor before Dr. Hall told her about the problems with the ObTape. The discovery rule requires that Ms. Alvarado know that the *product* caused her injuries, not simply that another symptom caused other injuries. A jury could find that it would be reasonable for Ms. Alvarado to believe that the erosion of her ObTape was caused by other factors, such as her diabetes or surgical procedures. This belief is further supported by the fact that Dr. Feldman and Dr. Minkes only removed a portion of the exposed ObTape, not the entire product. A patient in Ms. Alvarado's position could reasonably believe that her doctors removed only a portion of the ObTape because the product was not the cause of her injuries. We must draw such reasonable inferences in Ms. Alvarado's favor at the summary judgment stage. *See Scott v. United States*, 825 F.3d 1275, 1278 (11th Cir. 2016). Even if Ms. Alvarado suspected that ObTape may be the cause, such mere suspicion is insufficient under the discovery rule. *See Hildebrandt*, 839 F.2d at 399 ("There is a substantial difference between knowledge of injury and the cause of that injury and mere suspicion.").

We reached a similar conclusion under analogous circumstances in *Ballew v. A.H. Robins Co.*, 688 F.2d 1325, 1327 (11th Cir. 1982). There, considering

Georgia's similar "causal connection" requirement, we analyzed when a plaintiff's cause of action against the manufacturer of her Dalkon Shield  intrauterine device accrued.  We reversed the district court's grant of summary judgment because there was a dispute as to when the plaintiff knew of a causal connection between her injuries and the Dalkon Shield.  *Id*. at 1327–1328.

Likewise, here, there are facts to support either (1) that Ms. Alvarado did know of a causal connection between ObTape and her injuries when Dr. Feldman removed a portion of it in February of 2007; *or* (2) that Ms. Alvarado was unaware of the causal connection because she attributed it to complications due to her diabetes until Dr. Hall informed her of alleged problems with ObTape in March of 2008.  Because Ms. Alvarado offered "evidence sufficient for a jury to return a verdict in [her] favor" on the limitations issue, summary judgment was not warranted.  *See Cohen*, 83 F.3d at 1349.  *See also Rogers*, 682 F. App'x at 711.

## IV

Consistent with the Eighth Circuit, we conclude that Minnesota law requires a causal connection before a cause of action accrues in a products liability case. Because there are issues of fact as to when Ms. Alvarado reasonably learned of such a connection, we reverse the grant of summary judgment in favor of Mentor.

**REVERSED AND REMANDED.**

9